IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MICHELLE TIPPENS, § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | No. 3:14-cv-67-BN |
| § | |
| CAROLYN W. COLVIN, § | |
| Acting Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Michelle Tippens seeks judicial review of a final adverse decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision is affirmed in all respects.

**Background**

Plaintiff alleges that she is disabled due to a variety of ailments, including cervical, thoracic, and lumbar spine degenerative disc disease; residuals of neck surgery; chronic pain; arthritis in her knees; and depression. *See* Dkt. No. 10-7 at 5. After her application for disability benefits was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). Dkt. No. 10-5 at 14. That hearing was held on June 18, 2012. Dkt. No. 10-3 at 18, 36. At the time of the hearing, Plaintiff was 34 years old. *Id.* at 39. She has a master's degree in Administration of Justice and Security and has past work experience as a claims representative, waitress, stock clerk, and cashier. *See id.* at 27, 40, 60-61. Plaintiff has not engaged in substantial gainful activity since November 26, 2008. *See id.* at 18, 40.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability benefits. *See id.* at 29. Although the medical evidence established that Plaintiff suffered from degenerative disc disease of the spine status-post fusion, fibromyalgia, bilateral knee degenerative joint disease, migraine headaches, affective disorder, and bipolar disorder, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. *See id.* at 20. The ALJ further determined that Plaintiff had the residual functional capacity to perform a limited range of work but could not return to her past relevant employment. *See id.* at 22, 27. Relying on the testimony of a vocational expert, the ALJ found that Plaintiff was capable of working as a laundry folder, assembler, and price marker – jobs that exist in significant numbers in the national economy. *See id.* at 27. Given her age, education, and exertional capacity for work, the ALJ determined that Plaintiff was not disabled under the Medical-Vocational Guidelines. *See id.*

Plaintiff appealed that decision to the Appeals Council. *See id.* at 14. The Council denied her request for review. *See id.* at 2.

Plaintiff then filed this action in federal district court. *See* Dkt. No. 1. Plaintiff challenges the hearing decision on the grounds that (1) the Commissioner did not properly consider and evaluate medical opinion evidence from Plaintiff's treating physicians and (2) the Commissioner did not properly consider all of Plaintiff's impairments in determining residual functional capacity. *See* Dkt. No. 15 at 2.

The Court determines that the hearing decision is affirmed in all respects.

**Legal Standards**

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity."). The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the

national economy that the claimant can perform. *See Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show

5

that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Medical Opinion Evidence

Plaintiff first contends that the Commissioner failed to properly evaluate the medical opinion evidence presented by three treating physicians: Dr. Jonathan Edward Walker, Dr. Cheryl Krames Sampson, and Dr. Martin McElya. *See* Dkt. No. 15 at 9-14. All three doctors, evaluating Plaintiff between August 2010 and October 2010, found that Plaintiff suffered from significant limitations, that sustained work would exacerbate her symptoms, and that Plaintiff has been disabled since November 27, 2008. *See* Dkt. No. 10-3 at 24-25; Dkt. No. 10-9 at 26-28; Dkt. No. 10-10 at 46-48; Dkt. No. 10-12 at 22-24. Additionally, Dr. Sampson recommended that Plaintiff be reevaluated within the following six months to determine if Plaintiff had recovered from her cervical spinal surgery. *See* Dkt. No. 10-10 at 48.

Plaintiff asserts that the ALJ erred by failing to properly evaluate the treating physicians' opinions as to Plaintiff's symptoms' severity and the functional limitations produced. *See* Dkt. No. 15 at 12. Plaintiff further urges that the ALJ erred by speculating on the ameliorative effects of Plaintiff's cervical fusion surgery and by not re-contacting Plaintiff's treating physicians to determine whether her functional ability had actually improved. *See id*. at 12-13.

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in

6

determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan*, 38 F.3d at 237. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Martinez*, 64 F.3d at 175-76 (citing 20 C.F.R. § 404.1527(c)(2)). And "[t]he opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

But the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion" when good cause is shown. *Id.* at 455-56 (internal quotations omitted). An ALJ may show good cause "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

20 C.F.R. § 404.1527(c)(2) requires the ALJ to consider specific factors "to assess the weight to be given to the opinion of a treating physician when the ALJ determines that the opinion is not entitled to 'controlling weight.'" *Id.* at 456. Specifically, the ALJ must consider:

(1) the physician's length of treatment of the claimant;

(2) the physician's frequency of examination;

(3) the nature and extent of the treatment relationship;

(4) the support of the physician's opinion afforded by the medical evidence of record;

7

    (5) the consistency of the opinion with the record as a whole; and

    (6) the specialization of the treating physician.

20 C.F.R. § 404.1527(c)(2); *see also Newton*, 209 F.3d at 456. The ALJ must consider all six of the Section 404.1527(c)(2) factors if "controlling weight" is not given to a treating physician's medical opinions. *See* 20 C.F.R. § 404.1527(c) ("Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion."); *see also Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001); *McDonald v. Apfel*, No. 3:97-cv-2035-R, 1998 WL 159938, at *8 (N.D. Tex. Mar. 31, 1998).

    In *Newton*, the Fifth Circuit concluded that "an ALJ is required to consider each of the § 404.1527[(c)] factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456. But, in decisions construing *Newton*, the Fifth Circuit has explained that "[t]he *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). Therefore, where there are competing opinions of examining physicians, the ALJ need not necessarily set forth his analysis of the Section 404.1527(c) factors when declining to give controlling weight to a treating physician. *See id.* at 466-67.

    Here, the ALJ reviewed the medical records in detail and concluded that, although the record established impairments and limitations in residual functional capacity, the conclusion reached by treating physicians – Dr. Walker, Sampson, and McElya – that Plaintiff "has a functional ability to perform less than 'sedentary'

8

exertional activities are given little weight because they were all obtained within months of [Plaintiff's] cervical fusion, and therefore, very speculative in nature with regard to her condition after recovery from the surgery." Dkt. No. 10-3 at 26-27. The ALJ instead gave controlling weight to the record evidence and state agency medical consultants. *See id.* at 27.

In determining Plaintiff's residual functional capacity, the ALJ found compelling the State's experts' medical opinions. *See id.* In December 2010, State agency consultant Dr. Jeanine Kwun assigned Plaintiff a functional ability to perform "light" exertional activities. *See id.* at 25; Dkt. No. 10-12 at 43-50. A different state agency consultant, Dr. Laurence Ligon, affirmed this opinion in April 2011. *See* Dkt. No. 10-3 at 25; Dkt. No. 10-12 at 55. A state agency psychologist, Dr. Leela Reddy, determined that Plaintiff had severe impairment related to listing 12.04, major depressive disorder, and determined that Plaintiff had moderate limitations for activities of daily living, moderate limitations regarding social functioning, and moderate limitations regarding concentration, pace, and persistence. *See* Dkt. No. 10-3 at 24-25. Dr. Reddy opined that Plaintiff had the capacity to "understand[,] remember and carry out detailed instructions, get along with coworkers and adjust appropriately to changes in the work setting." Dkt. No. 10-12 at 27; *see also* Dkt. No. 10-3 at 21, 25. The ALJ also relied on Plaintiff's medical records from the VA Medical Center, where the doctor noted "normal gait, full range of motion, bilateral grip within normal limits, and entirely normal joints without evidence of effusion or arthritis." Dkt. No. 10-3 at 26.

9

While Plaintiff is correct that Drs. Walker, Sampson, and McElya found significant limitations that would support a finding of disability, "the ALJ has sole responsibility for determining a claimant's disability status" and can reject the opinion of any physician where he finds the evidence supports a contrary conclusion regarding Plaintiff's limitations and good cause is shown. *See Newton*, 209 F.3d at 455-56. Here, even assuming these physicians qualify as treating sources, the ALJ did just that.

The ALJ reviewed the medical records in detail and concluded that, although the record established severe impairments and moderate limitations in residual functional capacity, the statements, descriptions, and medical evidence of Plaintiff's impairments, symptoms, and limitations are "unpersuasive" and "not entirely credible" and that the evidence of severe disability was "relatively weak." Dkt. No. 10-3 at 25, 27. As to Plaintiff's impairments prior to her back surgery, the ALJ cited medical records including (1) MRI examinations of the cervical and lumbar spine performed in 2009 that were essentially within normal limits; and (2) a July 2010 MRI of the cervical spine that showed a "minimal" protrusion which was eventually corrected by the August 2010 disc fusion. *See id.* at 12. The ALJ's findings suggest that the ALJ did not find credible the disability findings of the treating physicians even before the corrective surgery – and, thus, he did not find that Plaintiff was disabled for at least 12 consecutive months, which would have required consideration of a closed period of disability. *See Waters v. Barnhart,* 276 F.3d 716, 719 (5th Cir. 2002) (citation omitted) ("[I]n a closed period case, 'the decision-maker determines that a new applicant for

disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision.'").

The ALJ also found the statements of Drs. Walker, Sampson, and McElya were entitled to little weight because they were obtained within months of Plaintiff's cervical fusion and speculative as to Plaintiff's condition after recovery from the surgery. *See* Dkt. No. 10-3 at 26-27. Instead, the ALJ adopted the more recent determinations of the state agency medical consultants that set forth a functional ability to perform "light" exertional activities and found no significant mental impairments or deficits of cognition, memory, concentration, or judgment that would preclude her from performing job tasks that require more occasional contact with the general public. *Id.* at 25-27. Substantial evidence supports this determination.

Although Plaintiff contends that the ALJ was under an obligation to provide a detailed analysis of each of the Section 404.1527(c) factors under *Newton*, *see* Dkt. No. 15 at 11-12, that procedure is only required where there is no contravening evidence from a treating or examining physician, *see Qualls*, 339 F. App'x at 466-67. Here, the ALJ noted that the medical evidence after Plaintiff's cervical spine surgery in August 2010 revealed few functional limitations. *See* Dkt. No. 10-3 at 26. For example, the ALJ cited the significant progress reflected in the report prepared by Plaintiff's surgeon, Dr. Mark Cwikla, on August 10, 2010 – 8 days after her surgery – and on August 30, 2010 – 28 days after her surgery. *See id.* Dr. Cwikla stated that, on August 10, 2010,

> Michelle Tippens returns today, very pleased. Most of her pain is gone. She has had minimal spasm on the right side of her neck. The incision is

11

> healing beautifully. I removed the Steri-Strips today and replaced it with one. There is no swelling or inflammation.

Dkt. No. 10-10 at 36. Dr. Cwikla reported that, on August 30, 2010,

> Michelle Tippens is seen today in followup. She is doing very well. She still has some pain in her right arm, and her numbness has resolved. I think she is doing beautifully for having such a long lead in on her problems. Her lower back bothers her and she has occasional arm pain. I think this will resolve with therapy when it is started next month.

*Id*. at 35. Despite Plaintiff's contention that the ALJ "had a duty to recontact each of the treating physicians to determine whether, and to what extent, the Plaintiff's functional ability had actually improved subsequent to the cervical fusion," Dkt. No. 15 at 12-13, such a duty only arises where there is insufficient evidence to make a disability determination or if, after weighing the evidence, the ALJ cannot reach a conclusion about whether a claimant is disabled. *See* 20 C.F.R. § 404.1512(e). Here, the ALJ found compelling the medical opinion of the treating surgeon, Dr. Cwikla, that most of Plaintiff's pain was resolved by the cervical fusion and that the lingering pain would be resolved by therapy. The ALJ was not therefore required to establish that Plaintiff's condition had improved, *see* Dkt. No. 15 at 14, because Dr. Cwikla had already indicated that her condition had improved, *see* Dkt. No. 10-3 at 25-26.

Moreover, the ALJ found the medical evidence in the record supporting Plaintiff's claims of mental impairment, knee pain, and fibromyalgia were inconsistent with and overcame the disability findings of Drs. Walker, Sampson, and McElya. He indicated that,

> [o]n recent examination of the knee, no examiner has observed significant intra-articular problems in the knee. MRI films of the knees in 2010

12

> revealed only minor degenerative changes. In 2010, the claimant indicated the presence of pain and swelling and the VA physician referred her to physical therapy, although the record contains no evidence that she underwent this therapy. The record reveals relatively infrequent trips to the doctor for the allegedly disabling symptoms since 2010. Furthermore, the claimant's treatment has been essentially routine and/or conservative in nature, without the need for additional physical therapy, injections or surgical intervention.
>
> Despite her generalized muscle and joint aches/pain related to fibromyalgia, the undersigned notes that objective clinical findings upon examinations of the claimant have revealed no significant abnormality of any joint or abnormal joint functioning. At an examination of the claimant at the VA Medical Center in October 2011, she complained of polyarthalgias and numbness in her legs. However, the doctor noted normal gait, full range of motion, bilateral grip within normal limits, and entirely normal joints without evidence of effusion or arthritis. An EMG nerve conduction study conducted in 2009 found no neuropathy or muscle disease. In October 2011, the claimant also stated that her migraine headaches had reduced in frequency to once or twice monthly, and were managed by prescription medication.
>
> The claimant's mental health treatment has been notably infrequent. Progress notes further reflect the claimant has only intermittent periods of treatment, counseling and therapy and that she is non-compliant with medications. None of the claimant's treating or examining physicians have imposed restrictions or offered limitations with respect to h[er] ability to perform the mental demands of work activity. With documentation of only limited mental health treatment sought or received by the claimant, the undersigned is simply not persuaded that she considers her symptomatology to be debilitating or unmanageable. Furthermore, the claimant has not had a history of extensive mental health counseling as would be indicated by disability psychological impairments.

Dkt. No. 10-3 at 26.

In sum, the ALJ found that the medical evidence in the record from another treating physician supported a contrary conclusion regarding Plaintiff's limitations and

good cause existed to discount the findings of Drs. Walker, McElya, and Sampson because they were unsupported by the evidence. He was entitled to do so.

Consideration of Certain Impairments and Limitations in RFC Assessment

Plaintiff also contends that the ALJ failed to consider the effect of significant exertional and non-exertional limitations established by the record in determining Plaintiff's Residual Functional Capacity. *See* Dkt. No. 15 at 14-15. Specifically, Plaintiff alleges that the ALJ failed to consider the effect of her migraines, her use of a walker, and her anxiety disorder in determining Plaintiff's RFC. *See id.*

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, and must consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. Jul. 2, 1996); SSR 96-8p, 1996 WL 374184, at *5. The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded in part by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

14

In this case, the record indicates that the ALJ considered evidence that Plaintiff used a roller walker due to bilateral knee pain, *see* Dkt. No. 10 at 24, that Plaintiff was taking medications for insomnia and anxiety, *id.*, and that Plaintiff suffered from migraine headaches once or twice monthly, *see id.* at 26. All three topics were also raised during the June 18, 2012 hearing. *See* Dkt. No. 10-3 at 42-45, 48. The ALJ included these conditions in his review of the evidence, which demonstrates that he was aware of and considered them in his analysis. The medical reports and opinions on which the ALJ relied to determine Plaintiff's RFC also took the impairments into account in evaluating the Plaintiff's limitations. In making his RFC finding, the ALJ stated that he "h[ad] considered all symptoms" and limited Plaintiff to "light work" with various other restrictions. Dkt. No. 10-3 at 22.

The record thus supports the conclusion that the ALJ took the effect of her migraines, her use of a walker, and her anxiety disorder into account when determining Plaintiff's RFC and confirms that the ALJ included all the appropriate functional limitations in his RFC assessment. Thus, this claim of error is unsupported and provides no basis to reverse the ALJ's decision.

## Conclusion

The hearing decision is affirmed in all respects.

DATED: October 2, 2014

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE